Filed 9/13/22 In re D.O. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.O., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078729 |
| Plaintiff and Respondent, | (Super.Ct.No. J287230) |
| v. | OPINION |
| G.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Conditionally reversed in part with directions.

Konrad S. Lee, by appointment of the Court of Appeal, for Defendant and Appellant, G.L.

1

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

## I. INTRODUCTION

D.O. was detained and removed from his parents, F.M. (Mother) and G.L. (Father), shortly after birth. The juvenile court terminated Mother's and Father's parental rights after a contested hearing pursuant to Welfare and Institutions Code[1] section 366.26. Father appeals from this order, arguing that the matter must be conditionally reversed and remanded because the juvenile court, as well as San Bernardino County Children and Family Services (CFS), failed to discharge their duty of inquiry under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.). We agree and conditionally reverse.

## II. FACTS AND PROCEDURAL HISTORY[2]

D.O. was detained by CFS after testing positive for methamphetamines at the time of his birth. Father did not appear at the detention hearing, but he was interviewed by a social worker shortly thereafter. According to the social worker, Father reported that he had a prior relationship with Mother, was aware Mother had mental health and substance abuse issues, and also occasionally used elicit drugs. As a result, CFS filed an amended petition pursuant to section 300 et seq., alleging Father's failure to supervise or protect,

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Because Father only identifies CFS's purported failure to interview paternal relatives as the basis for concluding that CFS failed to comply with its obligations under ICWA, we summarize only the facts relevant to CFS's inquiries regarding D.O.'s potential Native American ancestry through paternal relatives.

failure to provide, and inability to provide due to substance abuse pursuant to section 300, subdivision (b).

On November 30, 2020, CFS filed a joint jurisdictional and dispositional report. According to the report, Father represented to a social worker that he may have Native American ancestry through the "Yaqui" tribe but had never looked into the matter. Father admitted he was not a registered member of the tribe, had never lived on a reservation, and had never received any services through the tribe. He expressed the belief that D.O.'s paternal great-grandfather "looked like an Indian," but D.O.'s paternal grandmother "did not know anything about it." The social worker stated that Father declined to provide contact information for D.O.'s paternal grandmother, but the report later identified that D.O.'s paternal grandmother resided in the same home as Father. Additionally, the report identified three paternal relatives as Father's safety network and support system: D.O.'s paternal grandmother, paternal grandfather, and paternal great aunt.

On December 3, 2020, the trial court held a joint jurisdictional and dispositional hearing. During the hearing, the juvenile court specifically questioned Father about his knowledge of D.O.'s potential status as an Indian child. Father provided an incoherent response regarding whether any of his family members were members of an Indian tribe,[3]

---

[3] Specifically, when asked if he knew anyone in his family with Native American or American Indian ancestry, Father stated, "Oh, my gosh. Yes, of course." However, when asked to identify a tribal entity, Father replied, "We—the whole tribe. Everything," pointed to a picture in the courtroom and further stated, "that's my family right there. When you look at that picture." When pressed further, Father stated he had no information other than the picture in the courtroom.

but admitted that he had never lived on a reservation or received any tribal services. Following this exchange, Father was provided an ICWA inquiry form to complete. However, Father apparently left the entire form blank, other than his signature.

On January 6, 2021, CFS provided additional information to the juvenile court regarding its efforts to inquire about D.O.'s potential status as an Indian child. CFS represented that a social worker had attempted to contact paternal grandmother on at least three occasions in the two weeks between December 21, 2020 and January 4, 2021, and left a voicemail for paternal grandmother on each occasion but received no response. There was no mention of any attempt to contact any other paternal relatives.

On February 22, 2021, the juvenile court held a contested dispositional hearing. The juvenile court noted that Father's previous ICWA inquiry form was blank. As such, the juvenile court sought to obtain a direct response from Father on the record. When asked if he knew of anyone in his family with Native American or American Indian ancestry, Father responded that he did not and that he knew of no family members registered with any tribal entity. Father confirmed that the statement " 'I have no Indian ancestry as far as I know' " was an accurate statement and further gave the juvenile court permission to fill out Father's ICWA inquiry form to reflect that understanding. As a result of this representation, the juvenile court made a finding that ICWA did not apply.

On August 11, 2021, CFS filed a status review report. The report continued to identify D.O.'s paternal grandparents and paternal great aunt as part of Father's safety network. The report also suggested that CFS knew D.O.'s paternal grandfather was currently in the hospital and had attempted to facilitate a visit between D.O. and his

4

paternal grandfather. However, the portion of the report pertaining to ICWA compliance did not document any efforts by CFS to inquire about potential Native American ancestry or D.O.'s status as an Indian child. Instead, the report referred only to the fact that the juvenile court had previously made a finding that ICWA did not apply.

On December 17, 2021, CFS filed a section 366.26 report. The portion of the report pertaining to ICWA compliance again referred only to the fact that the juvenile court had previously made a finding that ICWA did not apply. Elsewhere in the report, CFS noted that paternal grandmother had completed a fingerprinting and screening process in order to facilitate visitation with D.O.; that CFS provided paternal grandmother with written notice of the proceedings by mail; that Father had identified a paternal aunt residing out of state for potential placement; and that a social worker had communicated by telephone with a paternal second cousin regarding the potential for placement. Despite these documented communications, nothing in the report indicated CFS made an ICWA-related inquiry with any of these relatives.

On March 15, 2022, the juvenile court held a contested permanency planning hearing pursuant to section 366.26 and ordered Father's parental rights terminated.

## III. DISCUSSION

On appeal, Father claims that the juvenile court's order terminating his parental rights must be reversed and remanded to permit additional ICWA compliance. Specifically, Father contends that CFS failed to discharge its initial duty of inquiry to contact extended family members to inquire of D.O.'s possible status as an Indian child.

5

A. *Lega l Background and Standard of Review*

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.) The Welfare and Institutions Code "creates three distinct duties regarding ICWA in dependency proceedings. First, from the [department's] initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.*, at p. 1052; § 224.2)

Following the inquiry stages, the juvenile court may make a finding that ICWA does not apply because the CFS's inquiry and due diligence was " 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1049.) However, the duty to inquire is " 'an affirmative and continuing duty' " and the juvenile court " 'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' " (*Id.* at

6

pp. 1048, 1050; *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["[T]he juvenile court has a continuing duty to conduct an inquiry when it has received information that a dependent child might be an Indian child, as defined by ICWA . . . ."].)

A juvenile court's finding that ICWA does not apply includes an implicit finding that social workers fulfilled their duty of inquiry. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314; *In re Austin J.*, at p. 885 [implicit finding, reviewed for substantial evidence, that social workers fulfilled their duty of inquiry].)

B. *The Juvenile Court's ICWA Finding Is Not Supported by Substantial Evidence*

On appeal, the focus of Father's claim is that CFS failed to interview extended family members as part of its duty of initial inquiry in order to determine whether any information might exist that would suggest D.O. is an Indian child. We agree the record is insufficient to support the juvenile court's implied finding that the social workers discharged their duty of initial inquiry.

Here, by the time of the permanency planning hearing, CFS's own reports referenced at least five extended paternal family members known to CFS: D.O.'s paternal grandparents, a paternal great aunt, a paternal aunt, and a paternal second cousin. While the record suggests that a social worker unsuccessfully attempted to contact D.O.'s paternal grandmother by telephone, CFS did not document any other efforts to communicate with any other family members for the purpose of making an ICWA

7

inquiry.[4]  Further, the record shows that CFS had the ability to, and actually did, communicate with at least some of these extended family members, as CFS reported that it facilitated a fingerprinting process with D.O.'s paternal grandmother; a social worker actually spoke with his paternal second cousin over the phone regarding potential placement; and CFS attempted to facilitate a visit between D.O. and his paternal grandfather while the grandfather was in the hospital.  Despite these documented communications, nothing in the record suggests CFS inquired with these relatives about D.O.'s potential status as an Indian child.  Such a record simply cannot support a finding that CFS discharged its initial duty of inquiry under ICWA.

CFS argues that the juvenile court's finding should be upheld because the record does not suggest a reason to believe D.O. was an Indian child in light of Father's representation that he had no knowledge of Indian ancestry.  However, this argument fails to appreciate the three distinct duties required under ICWA and the related state statutes.  The initial duty of inquiry "applies to every 'child for whom a petition under [section 300] may be or has been filed . . . .'" (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 884; § 224.2.)  The " 'reason to believe' " and " 'reason to know' " standards are only relevant with respect to triggering a duty of further inquiry and a duty to provide formal

---

[4] Even if D.O.'s paternal grandmother had been the only identified relative, we question whether this representation alone could have supported the juvenile court's finding that ICWA did not apply.  Notably, all of these documented calls occurred during the peak holiday weeks between December 21, 2020 and January 4, 2021.  Further, later reports clearly established that CFS was able to successfully communicate with D.O.'s paternal grandmother, as she apparently successfully completed a fingerprinting process, and CFS represented they provided her notice of the section 366.26 hearing by mail.

notice. (*In re Austin J.*, at p. 884.) Thus, even absent a reason to believe D.O. was an Indian child, CFS was obligated to fulfill its initial duty of inquiry.

This initial duty of inquiry includes the obligation to contact the child's extended family members to gather information that may be pertinent to the child's status as an Indian child. (§ 224.2, subd. (b); *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431 ["[S]ection 224.2, subdivision (b), imposes [an obligation] on the Department to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry."]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*) [The duty of initial inquiry includes gathering information from extended family members.].) Moreover, the duty to make such inquiries persists even where a parent has no knowledge of Indian ancestry. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.)

As explained in *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 554: "[S]ection 224.2, subdivision (b) . . . requires the Department to ask, as part of its initial duty of inquiry, extended family members . . . whether the child is or may be an Indian child. [Citation.] Nothing in [the statute] relieves the Department of its broad duty to seek that information from 'all relevant' individuals [citation] simply because a parent states on the ICWA-020 form . . . , 'I have no Indian ancestry as far as I know.' Such a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe. [Citations.] . . . [¶] . . . That [a parent] disclaimed any Indian ancestry at the outset of the dependency proceedings [does] not end the Department's duty of inquiry, especially where relevant contact and identifying information [is] readily available."

9

Thus, the fact that Father eventually expressed that he had no knowledge of Indian ancestry did not absolve CFS of its initial duty of inquiry, which included the obligation to make reasonable attempts to contact extended family members for the purpose of gathering information potentially relevant to D.O.'s status as an Indian child. Where multiple extended family members are known to CFS, but the record does not show any attempt to contact them for the purpose of making an ICWA inquiry, the record simply does not support a finding that CFS discharged its initial duty under the ICWA.

C. *The Record Does Not Permit Us to Conclude CFS's Failure Was Harmless*

CFS also argues that, even if it failed to fulfill its duty of inquiry, any such failure should be deemed harmless. We disagree.

We acknowledge that the standard of prejudice requiring reversal in cases involving ICWA is unsettled in the Courts of Appeal. (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 433 ["Courts of Appeal are divided as to whether a parent must make an affirmative showing of prejudice to support reversal . . . ."].) However, this court recently adopted a standard of prejudice in *Benjamin M.*, *supra*, 70 Cal.App.5th 735 that rejects both an automatic rule of reversal or a rule that places the burden squarely on the parents to show the likelihood of obtaining a more favorable result. (*Id.* at pp. 743-745.) Instead, we explained that reversal is required "where the record indicates that

10

there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.)[5]

In considering the prejudicial effect of a social services agency's failure to discharge its duty to inquire under ICWA, this court has repeatedly held that the failure to comply with an *initial* duty of inquiry is deemed prejudicial in the absence of information in the record to suggest otherwise. (*In re K.R.*, *supra*, 20 Cal.App.5th at p. 709; *In re N.G.* (2018) 27 Cal.App.5th 474, 484; *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745.) As this court has previously explained: "[W]here the record does not show what, if any, efforts the agency made to discharge its duty of inquiry [citations], . . . the burden of making an adequate record demonstrating the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements must fall squarely and affirmatively on the court and the agency. . . . [A]s a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible." (*In re N.G.*, at p. 484.) This remains true even under our recently articulated standard of prejudice in *Benjamin M.* (*Benjamin M.*, at p. 745 [A failure to make an initial inquiry of an extended family member is prejudicial because, "[w]hile we cannot know how [an extended family member] would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue."].)

Here, the record is devoid of any indication that CFS made efforts to contact known extended family members for the purpose of making an initial ICWA inquiry.

---

[5] In adopting this standard of prejudice, this court expressly disagreed with the standard articulated in *In re A.C.* (2021) 65 Cal.App.5th 1060. (*Benjamin M.*, at p. 745.) Accordingly, we find CFS's reliance on that case unpersuasive.

Nor does the record suggest this was merely a failure by CFS to adequately document its efforts, as CFS's reports contained no substantive information related to ICWA or any attempt to provide notices to any tribal entity. Given such a silent record, under the general rule we expressed in *In re N.G.*, *supra*, 27 Cal.App.5th 474, and our articulation of what constitutes prejudicial error in *Benjamin M.*, *supra*, 70 Cal.App.5th 735, we cannot conclude CFS's failure to comply with its initial duty of inquiry under the ICWA was harmless.

## IV. DISPOSITION

The order terminating Father's parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and of the Welfare and Institutions Code sections 224.2 and 224.3. If, after completing the initial inquiry, neither CFS nor the juvenile court has reason to believe or reason to know that D.O. is an Indian child, the order terminating Father's parental rights shall be reinstated. If, however, CFS or the juvenile court discovers a reason to believe that D.O. is an Indian child, the juvenile court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:


RAMIREZ _____
P. J.


SLOUGH _____
J.

13